FIRST DIVISION

February 2, 2004

No. 1-01-3617

THE PEOPLE OF THE STATE OF ILLINOIS

Plaintiff-Appellee,

v.

PATRICK RUCKER,

Defendant-Appellant.

)))

))))))))))))

Appeal from the Circuit Court of Cook County

01 CR 7093

Honorable 

Lon William Shultz, 

Judge Presiding

JUSTICE McBRIDE delivered the modified opinion of the court upon denial of rehearing:

Patrick Rucker (Rucker) was charged by information with one count of possession of a controlled substance with intent to deliver within 1,000 feet of a school and one count of possession of a controlled substance with intent to deliver.  The court entered a directed finding in favor of Rucker on the first count and, after a bench trial, convicted Rucker of possession of a controlled substance with intent to deliver and sentenced him to 12 years' imprisonment.  In this appeal, he argues (1) that the circuit court improperly failed to consider his posttrial 
pro se
 motion for reduction of his sentence; (2) that the circuit court should have conducted an inquiry into his allegations of ineffective assistance of counsel; (3) that the State failed to prove his guilt beyond a reasonable doubt; (4) that his trial counsel was ineffective; and (5) that he was improperly sentenced as a Class X offender. 

The evidence at trial was as follows.  Officer Golosinski testified for the State that in the evening of February 8, 2001, he was part of a narcotics surveillance operation at 3909 West Jackson Street in Chicago, Cook County, Illinois.  From approximately 70 to 100 feet away, Golosinski saw Rucker standing alone on the south side of Jackson Street just west of Springfield Avenue.  Golosinski was in uniform and used binoculars to aid his vision.  He described that he saw a black male approach Rucker, engage in a conversation with him, and then exchange "what appeared to be United States currency in the form of green paper."  Rucker accepted the money, stuffed it in the front of his pants, reached into his right jacket pocket and withdrew an item, which he gave to the individual, who then departed.  Golosinski observed two similar transactions with other individuals who approached Rucker.  Golosinski lost sight of Rucker, who walked away momentarily, but returned several minutes later, at which time Golosinski saw a black two-door vehicle pull up on the north side of Jackson Street just west of Springfield Avenue.  Rucker approached the driver of the vehicle and had a brief conversation with him.  The individual then handed what Golosinski believed was United States currency to Rucker, who took it, shoved it down the front of his pants, reached into his right jacket pocket, removed an item, and gave it to the driver of the vehicle.  

After observing the fourth transaction, Golosinski radioed his enforcement team with a description of Rucker and his location.  Golosinski saw one of the enforcement officers, Officer Carroll, approach Rucker.  At Golosinski's request, Carroll checked the contents of Rucker's right jacket pocket.  Carroll informed Golosinski that the pocket contained "three capsules containing a white chunky substance," which was later "found to be cocaine."  Rucker was then arrested and searched.  One hundred thirty dollars United States currency was recovered from his person.  Golosinski inventoried the three capsules removed from Rucker's jacket pocket under number 2479442.  On cross-examination, Golosinski explained that he was conducting surveillance at the particular location where Rucker was apprehended because he "knew the location from prior arrests."    

Carroll also testified for the State.  He stated that he was an enforcement officer at the narcotics surveillance operation in the area of 3909 West Jackson Street on February 8, 2001.  During the operation, he was directed to 3909 West Jackson, where he apprehended Rucker.  Upon instruction by Golosinski, Carroll reached into Rucker's right front jacket pocket, where he discovered "[t]hree small capsules containing a chunky rock substance."  Rucker was then arrested.    

The State and defense entered into two stipulations.  The first, which is at issue in this appeal, concerned the capsules recovered from Rucker's jacket pocket:

"[I]t would be stipulated by and between the parties that Officer Golosinski inventoried the recovered three items of suspect cocaine under inventory number 2479442.  That there was a proper chain of custody maintained at all times.

That forensic chemist Gwendolyn Brister is employed by the Chicago -- Illinois State Police and is qualified to testify as an expert in the area of forensic chemistry.

That the chemist received the three items described above in a sealed condition.  That the chemist weighed the three items and found the total estimated weight to be .6 grams.  That the chemist performed tests commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance.  And that after testing one of the three items the chemist's opinion within a reasonable degree of scientific certainty is that the tested item was positive for the presence of cocaine in the amount of .2 grams."

The parties also stipulated:

"[I]nvestigator E.J. Tansy is employed by the Cook County State's Attorney as an investigator.

That he received a request to measure the distance from 3909 West Jackson to the Delano Grammar School located at 3905 West Wilcox.  That Investigator Tansy went to 3909 West Jackson and measured the distance from the Delano Grammar School and found that distance to be 424 feet."

The State rested, and Rucker moved for a directed finding.  The court granted the motion with regard the charge of possession of a controlled substance with intent to deliver within 1,000 feet of a public school and denied the motion with regard to the remaining charge.  The defense rested without presenting any evidence.  The court found Rucker guilty of possession of a controlled substance with intent to deliver.  

On August 30, 2001, the trial court denied Rucker's motion for a new trial.  Also, the parties and the court agreed that Rucker was Class X eligible because of at least two previous Class 2 felony convictions.  After hearing aggravation and mitigation, the court sentenced Rucker to 12 years' imprisonment.  

On September 18, 2001, Rucker's attorney, identified as the "State Appellate Defender/Public Defender of Cook County," filed the notice of appeal in this case.  The trial court granted Rucker's attorney's requests to appoint counsel for Rucker on appeal and to provide copies of the record and report of proceedings without cost, which were filed simultaneously with the notice of appeal.  That same day, the clerk file stamped three 
pro se
 motions, which were mailed by Rucker on September 10, 2001: (1) a motion for common law record and trial transcript; (2) an application to proceed as a poor person and for appointment of counsel; and (3) a motion for reduction of sentence.  In his motion for reduction of sentence, Rucker claimed that his sentence should be reduced because he "had inadequate representation by counsel" and "[t]he facts were not sufficient to support the finding of guilt."  On September 26, 2001, the court denied Rucker's 
pro se
 motion for common law record and trial transcript.  The trial court never ruled on Rucker's 
pro se 
motion for reduction of sentence. Rucker requests that we remand his case for the court to consider his motion and to conduct a preliminary inquiry into his allegations of ineffective assistance of counsel.  We note, however, that there are no specific allegations in the motion as to how defense counsel was ineffective. 

The State argues that the court had no obligation to consider Rucker's 
pro se
 motion because Rucker was represented by counsel when he filed the motion.  It further argues that Rucker is not entitled to a hearing on his allegations of ineffective assistance of counsel because his claim was not properly raised.  Finally, the State argues that it would be a waste of judicial resources to remand this case because Rucker has separately raised the issue of ineffective assistance of counsel in this appeal and his claim is meritless. 

In reply, Rucker argues that he was not represented by counsel at the time he filed his 
pro se
 motion, and it was properly before the court.  Rucker also claims that while he has raised the issue of ineffective assistance of counsel in this appeal, unless this court is inclined to reverse on that ground, it should remand this matter to the trial court for further inquiry on Rucker's claim because "Rucker may [now] only raise those ineffective assistance claims that are apparent on the face of the record," whereas remand would allow him the opportunity "to 
create
 a record regarding counsel's alleged ineffectiveness."  (Emphasis in original.) 

Rucker also claims that we have jurisdiction over this appeal despite his unresolved 
pro se 
motion for reduction of sentence because "the trial court did not rule on the motion to reduce sentence and thus no order was entered disposing of it."  Supreme Court Rule 606 provides that where a defendant's attorney or a defendant not represented by counsel files a motion directed against the judgment, a notice of appeal filed before disposition of that motion has no effect and should be stricken by the trial court, regardless of whether the postjudgment motion was filed before or after the notice of appeal was filed.  188 Ill. 2d R. 606(b).  In its response brief, the State did not address Rule 606 or Rucker's contention that we have jurisdiction over this appeal.  However, where there is a question of our jurisdiction, we have a duty to consider it and dismiss the appeal if we find jurisdiction lacking. 
 People v. Jenkins
, 303 Ill. App. 3d 854, 856 (1999). Accordingly, we consider what effect Rucker's 
pro se
 motion for reduction of sentence has on our jurisdiction over this appeal.   

In 
People v. Jenkins
, 303 Ill. App. 3d at 856, which was decided before the current version of Rule 606 was adopted, the court held that it had jurisdiction over an appeal despite an unresolved posttrial motion, filed seven days after the notice of appeal.  It cited two supreme court cases, 
People v. Bounds, 
182 Ill. 2d 1 (1998), and 
People v. Laurie
, 106 Ill. 2d 33 (1985), as establishing a rule that " '[w]hen the notice of appeal is filed, the appellate court's jurisdiction attaches 
instanter
, and the cause is beyond the jurisdiction of the trial court.'" 
Jenkins
, 303 Ill. App. 3d at 857, quoting 
Bounds
, 182 Ill. 2d at 3.  Unlike 
Jenkins
, however, Rucker's 
pro se
 motion for reduction of sentence was filed before the notice of appeal.  

The court in 
People v. Everage
, 303 Ill. App. 3d 1082, 1084 (1999), also decided before the current version of Rule 606 was adopted, considered its jurisdiction when a motion to reconsider sentence was filed before the notice of appeal.  It held that the circuit court retained jurisdiction over the motion, and the appellate court lacked jurisdiction until the circuit court disposed of the motion.  
Everage
, 303 Ill. App. 3d at 1084.  
The defendant's counsel filed a motion to reconsider and the defendant subsequently filed a 
pro se
 notice of appeal, which the court ultimately held was premature because of the pending motion to reconsider.  
Everage
, 303 Ill. App. 3d at 1083, 1086.  The court was concerned with eager defendants who filed 
pro se
 notices of appeal to preserve their appeal rights after being admonished that they must do so within 30 days of entry of judgment while their attorneys took alternative measures to preserve additional issues for appeal.  
Everage
, 303 Ill. App. 3d at 1086-87. 

In this case, Rucker's attorney filed the notice of appeal after Rucker filed his 
pro se
 motion for reduction of sentence.  See, 
People v. Jennings
, 279 Ill. App. 3d 406, 413 (1996)(pleadings are considered timely filed on the day they are placed in prison mail system by incarcerated defendant).  Rucker's attorney chose not to file a motion to reconsider sentence, and Rucker's conclusory statements in his 
pro se
 motion have not preserved any additional issues for appeal that are not raised in this appeal.  Thus, the court's concern in 
Everage 
is not an issue in this case.

After 
Jenkins 
and 
Everage
 were decided, Supreme Court Rule 606 was amended to provide, in part:

"[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion.  When a timely post-trial or post-sentencing motion directed against the judgment has been filed by counsel or by defendant, if not represented by counsel, any notice of appeal filed before the entry of the order disposing of all pending post-judgment motions shall have no effect and shall be stricken by the trial court. *** This rule applies whether the timely post-judgment motion was filed before or after the date on which the notice of appeal was filed."  188 Ill. 2d R. 606(b).    

Thus, under the rule, our inquiry is whether Rucker's 
pro se
 motion for reduction of sentence makes the notice of appeal ineffective and deprives us of jurisdiction over this appeal.   

Rule 606 clearly states that when a timely posttrial or postsentencing motion has been filed by "counsel or by defendant, if not represented by counsel, any notice of appeal filed before entry of the order *** shall have no effect."  188 Ill. 2d R. 606(b).  Contrary to his assertions otherwise, the record reveals that Rucker was represented by counsel at the time he filed his
 pro se 
motion for reduction of sentence.  The notice of appeal, filed the same day his 
pro se
 motion for reduction of sentence was stamped by the clerk, identified his attorney as the "State Appellate Defender/Public Defender of Cook County," and was in fact signed by his trial attorney.  The record shows that Rucker was represented by this same attorney at trial and in posttrial proceedings, including sentencing and a motion for a new trial.  Rucker never discharged his counsel or requested that new counsel be appointed on his behalf.  Accordingly, there is no merit to Rucker's claim that he was not represented by counsel when he filed his 
pro se
 motion for reduction of sentence.

As the State properly points out, when a defendant is represented by counsel, he generally has no authority to file 
pro se
 motions, and the court should not consider them.  See 
People v. Handy
, 278 Ill. App. 3d 829, 836 (1996); 
People v. Neal
, 286 Ill. App. 3d 353, 355 (1996). " 'An accused has either the right to have counsel represent him or the right to represent himself; however, a defendant has no right to both self-representation and the assistance of counsel.' " 
Handy
, 278 Ill. App. 3d at 836, quoting 
People v. Pondexter
, 214 Ill. App 3d 79, 87 (1991).  In other words, he is not entitled to "hybrid representation, whereby he would receive the services of counsel and still be permitted to file 
pro se
 motions."  
Handy
, 278 Ill. App. 3d at 836.  Thus, our resolution of this issue would seem complete to say that Rucker was represented by counsel when he filed his motion; therefore, it was not properly before the trial court, should not have been considered, and does not invalidate the notice of appeal under Rule 606.  Under the unique circumstances of this case, however, our decision is not so simple.  

The State concedes that there is an exception to the general rule that prevents defendants from filing 
pro se
 motions when they are represented by counsel.  This exception allows defendants to raise 
pro se
 claims of ineffective assistance of counsel even when they are represented by counsel. See 
People v. White
, 322 Ill. App. 3d 982, 987 (2001)("[I]t contravenes human nature to expect counsel to adequately argue his own ineffectiveness").  The State argues, however, that Rucker's claim was not a proper claim of ineffective assistance of counsel because it was "addressed solely in his 
pro se 
Motion for Reduction of Sentence," rather than in a separate motion directed to his attorney's representation.  It further argues that it would be inefficient to remand this case for consideration of Rucker's claims of ineffective assistance of counsel when that issue is raised in this appeal.  Before we can consider Rucker's claims of ineffective assistance of counsel, however, we must determine whether Rucker's 
pro se 
motion for reduction of sentence adequately raised an issue of ineffective assistance of counsel, in which case it would be an exception to the general rule that defendants are not entitled to file 
pro se
 motions while represented by counsel and, under Rule 606 would make the notice of appeal ineffective.    

We find that Rucker's 
pro se
 motion for reduction of sentence does not fall within the exception for 
pro se 
motions alleging ineffective assistance of counsel because his motion fails to raise any issue of ineffectiveness.  Instead, it baldly asserts that Rucker "had inadequate representation by counsel," without providing any supporting facts or specific claims of ineffectiveness.  Such a motion fails to sufficiently raise any issue of ineffective assistance of counsel for the trial court to consider.  In
 
People v. Hampton
, 242 Ill. App. 3d 194, 199 (1992), for example, the defendant alleged that his counsel was ineffective because "the public defender's office's case load was too heavy."  The court found that the trial court could not be expected "to formulate a specific ineffectiveness claim from such ambiguous language" and was not required to conduct a hearing on whether new counsel should be appointed to investigate the defendant's claim.  
Hampton
, 242 Ill. App. 3d at 199.  In this case, Rucker's allegations are even more conclusory and ambiguous than in 
Hampton
.  Thus, he did not effectively raise any claim of ineffective assistance of counsel that should have been considered by the trial court, and he is not entitled to remand for consideration of his claim of ineffective assistance of counsel.  Further, because his 
pro se
 motion did not raise an issue of ineffective assistance of counsel, the exception to the general rule that defendants may not file 
pro se
 motions when they are represented by counsel does not apply.  Thus, the motion was not properly before the trial court, and it had no obligation to consider the motion. 
Additionally, Rucker never brought his 
pro se
 motion for reduction of sentence to the attention of the trial court or requested that it rule on his motion, and "[m]erely filing a motion with the office of the clerk" is not enough to put a motion before the court. 
People v. Jennings
, 279 Ill. App. 3d 406, 413 (1996).  Thus, Rucker's 
pro se 
motion for reduction of sentence had no effect on the notice of appeal under Rule 606, and we have jurisdiction.

In his petition for rehearing Rucker argues that we neglected controlling precedent and erroneously decided that the trial court had no obligation to further consider his 
pro se
 motion.  He relies on 
People v. Robinson
, 157 Ill. 2d 68, (1993), and 
People v. Moore
, 207 Ill. 2d 68 (2003).  In 
Robinson
, the court wrote:

"While a 
pro se 
motion for a new trial alleging ineffective assistance of counsel does not 
per se
 require appointment of new counsel to assist in the motion, the trial court must at least examine the factual matters underlying the defendant's claim.  If after examining the factual matters, the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then new counsel does not need to be appointed and the 
pro se 
motion can be denied.  If, however, the allegations show possible neglect of the case, new counsel should be appointed."  
Robinson
, 157 Ill. 2d at 86.  

In 
Moore
, the court similarly announced that "when a defendant presents a 
pro se
 posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim."  
Moore
, 207 Ill. 2d at 77-8.  We do not disagree with these cases.  However, the circumstances presented in this case differ substantially, rendering 
Robinson
 and 
Moore
 inapplicable to our analysis.  

In 
Robinson
, the defendant, prior to sentencing, "filed a 
pro se 
post-trial motion in which he raised the issue of ineffective assistance of counsel."  
Robinson
, 157 Ill. 2d at 85.  The trial judge "refused to allow the defendant to specify his complaints and to present supporting evidence and documentation."  
Robinson
, 157 Ill. 2d at 86.  The trial court made no such refusal in this case, nor was it presented with the opportunity to do so, because Rucker never brought his post-sentencing motion to the trial court's attention.  Furthermore, the court in 
Robinson
 did not address whether the defendant was represented by counsel at the time he filed his 
pro se
 motion.  Thus, the issue in that case was different than the issue in this case.  The issue there was whether the trial court improperly denied the defendant's "motion without making a preliminary inquiry into his claims."  
Robinson
, 157 Ill. 2d at 86.  In this case, the issue is whether Rucker's motion was sufficient to constitute an exception to the general rule that a defendant represented by counsel has no authority to file 
pro se 
motions.  We have concluded that it was not.  
Robinson
 does not change our conclusion.  

In 
Moore
, the defendant was represented by counsel when he filed his posttrial 
pro se
 motion for appointment of counsel other than the public defender.  
Moore
, 207 Ill. 2d at 73-4.  However, unlike Rucker's motion, that motion stated factual allegations supporting the defendant's claims.  Specifically, the motion alleged that " 'no line of meaningful communication was established' between defendant and trial counsel, whose 'entire attitude' showed that counsel was unconcerned with the defense of the case"; that trial counsel "wrongly advised defendant to waive a jury trial for trial and for sentencing and not to testify on his own behalf at trial; and failed to adequately cross-examine the State's witnesses where their testimony conflicted with police reports."  
Moore
, 207 Ill. 2d at 77.  In this case, the allegations of Rucker's motion were simply that his sentence should be reduced because he "had inadequate representation by counsel."  Moreover, unlike this case, the defendant in 
Moore
 brought his claim to the trial court's attention.  
Moore
, 207 Ill. 2d at 79.  For these reasons, we find both 
Robinson 
and 
Moore 
unpersuasive under the circumstances of this case. 
 

Turning to the merits, Rucker alleges 
in this appeal 
that his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress the physical evidence.  In order to succeed in his claim of ineffective assistance, Rucker must show: "(1) that his counsel's 'representation fell below an objective standard of reasonableness'; and (2) that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 
Strickland [v. Washington]
, 466 U.S. [668,] 694, 80 L.Ed. 2d [674,] 698, 104 S.Ct. [2052,] 2068 [(1984)]." 
People v. Lundy
, 334 Ill. App. 3d 819, 829 (2002).  "It is [a] defendant's burden to demonstrate that he has received ineffective assistance of counsel."  
Lundy
, 334 Ill. App. 3d at 833.  If the defendant fails to show prejudice, the court need not consider whether his attorney's representation fell below an objective standard of reasonableness.  
Lundy
, 334 Ill. App. 3d at 829-30. 

An attorney's decision whether to file a motion to quash arrest and suppress evidence is a matter of trial strategy that should be accorded great deference and is not ordinarily challengeable as ineffective assistance of counsel.  
Lundy
, 334 Ill. App. 3d at 830.  To succeed on a claim of ineffective assistance of counsel based upon the failure to file a motion to quash arrest and suppress evidence, " 'a defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed.' [Citations.]" 
Lundy
, 334 Ill. App. 3d at 830.  An attorney will not be deemed ineffective for a failure to file a futile motion.  
Lundy
, 334 Ill. App. 3d at 830.     

Rucker contends that it is likely that a motion to quash his arrest and suppress the narcotics recovered from him would have been granted because the search was warrantless and "did not qualify as a 'search incident to arrest' since the police did not arrest Mr. Rucker until after they recovered the narcotics from his jacket pocket."  Rucker further contends that there was insufficient probable cause to search or arrest him.  Specifically, he claims that "[e]ven if the surveillance officer 
suspected
 that narcotics transactions had occurred, testimony that a police officer witnessed what he 
suspected
 to be criminal activity without more is insufficient to establish probable cause."  (Emphasis in original.)  

"Probable cause to arrest exists when circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the individual arrested has committed it."  
People v. Rainey
, 302 Ill. App. 3d 1011, 1013 (1999).  It depends on the "totality of the circumstances known to the officer at the time of the arrest [citation], including the officer's factual knowledge and his prior law enforcement expertise" (
Rainey
, 302 Ill. App. 3d at 1013), requires a "case-specific analysis" (
People v. Little
, 322 Ill. App. 3d 607, 612 (2001)), and is governed by " 'commonsense, practical considerations and not by technical legal rules' " (
Lundy
, 334 Ill. App. 3d at 831, quoting 
People v. Metcalfe
, 326 Ill. App. 3d 1008, 1012 (2001)).  Probable cause is a mixed question of law and fact, except where the facts and credibility of the witnesses are not contested, in which case, probable cause is a question of law subject to 
de novo
 review.  
Rainey
, 302 Ill. App. 3d at 1014.  

A search incident to a valid arrest is valid if made contemporaneously with the arrest.  
Lundy
, 334 Ill. App. 3d at 832.  A search conducted immediately prior to a valid arrest is considered contemporaneous with that arrest.  See 
Little
, 322 Ill. App. 3d at 612.  Moreover, once an officer has probable cause to believe that items are contraband, the items are subject to seizure even in the absence of a warrant.  
People v. Hill
, 169 Ill. App. 3d 901, 909 (1988). 

Rucker relies on 
People v. Stewart
, 217 Ill. App. 3d 373 (1991), in support of his argument that a motion to quash his arrest and suppress the evidence recovered from him would have been likely to succeed.  In 
Stewart
, two police officers observed two individuals, standing on a sidewalk, engaged in conversation.  
Stewart
, 217 Ill. App. 3d at 374.  When the officers were about 50 to 75 feet away from the individuals, they saw one of the men hand something to the other, but could not identify what was exchanged or who gave what to whom.  
Stewart
, 217 Ill. App. 3d at 374-75.  The defendant then placed his right hand in his front pants pocket.  
Stewart
, 217 Ill. App. 3d at 375.  The officers drove towards the two men, who ran into a nearby building.  
Stewart
, 217 Ill. App. 3d at 375.  The officers apprehended the defendant inside the building, placed him under arrest, and handcuffed him.  
Stewart
, 217 Ill. App. 3d at 375.  The officers searched the defendant, uncovering 17 bags, each containing a white powdery substance.  
Stewart
, 217 Ill. App. 3d at 375.  The defendant argued on appeal that his counsel was ineffective for failing to file a motion to quash the cocaine found on his person.  
Stewart
, 217 Ill. App. 3d at 375.  The court agreed, finding that "the question of probable cause [to arrest] was a close one" because "[t]he officers conceded that they did not see what was transferred between the defendant and the other man."  
Stewart
, 217 Ill. App. 3d at 376. 

Rucker argues that his case presents a similarly close call on the issue of probable cause, which requires reversal of his conviction.  Specifically, he contends, "[t]he officer's inability to see or even describe what was being exchanged during observations made in the dark and from a distance of 70 to 100 feet make it possible that Patrick Rucker was doing nothing more than engaging in innocent transactions."  Rucker fails to recognize, however, that in this case, unlike 
Stewart
, Golosinski identified one of the items exchanged -- money.  He also observed four different transactions rather than just one as was observed in 
Stewart
, and, further unlike 
Stewart
, he was able to describe who gave and received the exchanged objects.

The State distinguishes 
Stewart
 in much the same way we have and relies instead on 
Lundy
.  In 
Lundy
, a police officer was conducting surveillance in an area, which was a " 'known location for high narcotics sales,' " when he observed the defendant take part in three different transactions, which he believed to involve the sale of narcotics.  
Lundy
, 334 Ill. App. 3d at 822.  The transactions were described as follows:

"[D]efendant would engage in brief conversation with an unknown individual, accept an unknown amount of United States currency, bend down, pick up a small box, remove an item, replace the box and hand the item to the unknown individual."  
Lundy
, 334 Ill. App. 3d at 822.

The defendant was apprehended after the third transaction, and the box was recovered and found to contain "white rocks" and "white powder," which were later identified as heroin and cocaine.  
Lundy
, 334 Ill. App. 3d at 822.  On appeal, the defendant claimed that his trial counsel was ineffective for not filing a motion to quash his arrest and suppress the recovered narcotics.  The court found that the arresting officer had probable cause to arrest the defendant because the dispatching officer had witnessed the three transactions and "possessed facts sufficient to establish probable cause to arrest defendant as a person of reasonable caution could believe that defendant had committed three separate illegal narcotics transactions."  
Lundy
, 334 Ill. App. 3d at 831-32.   Thus, it found that any motion to quash arrest and suppress the evidence would have been futile because the officer had probable cause to arrest the defendant.  
Lundy
, 334 Ill. App. 3d at 831.  

Rucker argues that 
Lundy
 is distinguishable because the defendant in that case was heard yelling "Rocks, blows," which the court recognized as street slang for cocaine and white heroin (
Lundy
, 334 Ill. App. 3d at 830 n.3), whereas Rucker was not seen or heard advertising in any similar manner.  Rucker's distinction of the facts does not show lack of probable cause in this case because, as noted above, probable cause determinations are based upon the totality of the circumstances at the time of arrest and must be made on a case-by-case basis.  Further, in this case, Golosinski observed one more transaction than the officer in 
Lundy
.

Rucker also relies on 
Little
 for support.  In 
Little
, 322 Ill. App. 3d at 611, a police officer saw the defendant engage in two transactions, whereby unidentified individuals approached the defendant and gave him money, which he accepted and placed into his pants pocket.  The officer then saw the defendant reach into another pocket, retrieve an item, and give it to the person who had given him the money.  
Little
, 322 Ill. App. 3d at 611.  On appeal, the defendant argued that his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence.  
Little
, 322 Ill. App. 3d at 609-10.  The appellate court agreed, finding that such a motion would have had a reasonable probability of success based on the facts of the defendant's case, but it never explained what made the motion to quash arrest or suppress evidence likely to succeed.  
Little
, 322 Ill. App. 3d at 613.  Thus, 
Little
 is not persuasive on the facts before us. 
 

In this case, Golosinski observed four different transactions in which he saw Rucker accept money from four different individuals in exchange for something that he removed from his jacket pocket. The number of transactions alone makes it unlikely that the transactions were innocent exchanges such as "paying off of a bet, splitting the cost of dinner or even a simple shake of hands."  
People v. Moore
, 286 Ill. App. 3d 649, 653 (1997); see also 
People v. Taylor
, 165 Ill. App. 3d 64, 67 (1987)("Although an isolated act may appear innocent, a series of similar transactions, by virtue of the repetition, may be sufficient to support an arrest
").  And, unlike 
Stewart
, one of the items exchanged was identified as United States currency and the defendant was identified as receiving the money and transferring the other object.  Moreover, the transactions were conducted both with individuals who approached the defendant on foot and in an automobile in an area that was known to Golosinski from previous arrests.  

In determining that the totality of these circumstances establishes probable cause for Rucker's arrest at the time of his arrest, we note that our courts have never conditioned probable cause in narcotics cases on prior visual identification of a narcotic substance.  In 
People v. Love
, 199 Ill. 2d 269, 280 (2002), for example, the supreme court found that probable cause existed for a warrantless arrest and search of the contents of the defendant's mouth where an officer "saw the man trade currency to the person on the bicycle for something[, which the officer could not identify,] in the defendant's mouth" and the officer "received a garbled response" upon asking the defendant her name.  In
 People v. O'Neal
, 176 Ill. App. 3d 823, 828 (1988), the officers overheard what they believed to be a narcotics transaction and subsequently saw the defendant with a plastic bag, which they believed contained narcotics, and the court found probable cause even though the officers did not see the contents of the plastic bag.  Similarly, in 
Taylor
, 165 Ill. App. 3d at 67, the officer did not identify the objects exchanged during five brief exchanges he witnessed between the defendant and persons who approached the defendant's car.  Yet, the court found probable cause based on the officer's observations and his previous knowledge of drug transactions in the area.  
Taylor
, 165 Ill. App. 3d at 67.  While none of those cases involved ineffective assistance of counsel claims for failure to file motions to quash arrest or suppress evidence, they involved determinations of probable cause and support our finding that there was probable cause to arrest Rucker.  Therefore, a motion to quash the arrest and suppress the evidence would have been futile, and it was not ineffective assistance of counsel not to file the motion.

Rucker also claims that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.  When considering an attack on the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence; instead, we consider it in the light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 
People v. Gibson
, 287 Ill. App. 3d 878, 880 (1997).  We may not substitute our judgment for that of the trial court "on questions of the weight of the evidence, the credibility of the witnesses, or resolution of conflicting testimony" (
People v. Raney
, 324 Ill. App. 3d 703, 706 (2001)), and we will not reverse a conviction on appeal " 'unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt' "
 
(
People v. Lundy
, 334 Ill. App. 3d 819, 825 (2002), quoting 
People v. Clemons
, 277 Ill. App. 3d 911, 923 (1996)).  The defendant bears the burden of proving insufficiency of the evidence.  
Raney
, 324 Ill. App. 3d at 706.   

To sustain a conviction for possession of a controlled substance with intent to deliver, the State is required to prove that "the substance at issue is in fact a controlled substance."  
Raney
, 324 Ill. App. at 705-06; 
People v. Hagberg
, 192 Ill. 2d 29, 34 (2000). Rucker contends that the evidence in his case was insufficient to support such a finding beyond a reasonable doubt. Specifically, he claims that the State failed to lay a proper foundation for admission of the chemist's findings.  He argues that the stipulation is deficient because the State failed to "(1) identify what tests were performed; (2) indicate that any equipment used in performing the tests was functioning properly at the time of the testing; or (3) explain why the chemist knew that his results were accurate."  Thus, he concludes, the State failed to prove that the substance he possessed was a controlled substance, and his conviction should be overturned.    

In response, the State argues that Rucker waived his objection to lack of foundation for the stipulation by not objecting at trial.  A party may waive an objection to lack of foundation if it is not raised at trial (
People v. Bynum
, 257 Ill. App. 3d 502, 514-15 (1994)); however, where an alleged error, even though based upon a stipulation, goes to the sufficiency of evidence to establish guilt in a criminal trial, it is not subject to the waiver rule (
People v. Cowans
, 336 Ill. App. 3d 173, 175-76 (2002)).  Thus, we will consider the merits of Rucker's claim.

An adequate foundation for expert testimony requires proof: 

"[T]he facts or data relied upon by the expert are of a type reasonably relied upon by experts in that particular field in forming opinions or inferences. [Citation.] In addition, when expert testimony is based upon an electronic or mechanical device *** the expert must offer some foundation proof as to the method of recording the information and proof that the device was functioning properly at the time it was used."  
Bynum
, 257 Ill. App. 3d at 513-14.  

A chemist, however, is not required to "determine for himself the reliability of the instrument being used in the evaluation of the suspected controlled substance."  
People v. Hill
, 169 Ill. App. 3d 901, 911 (1988).  A chemical analysis is not improper evidence because there exists a "speculative possibility that test samples being analyzed could have been contaminated" (
Hill
, 169 Ill. App. 3d at 911), and the failure to lay a proper technical foundation is not necessarily a violation of a defendant's substantial rights that automatically warrants reversal (
Bynum
, 257 Ill. App. 3d at 515).  

A stipulation has "the effect of eliminating proof which otherwise might have been required.  The law is well established that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the People have alleged against him."  
People v. Polk
, 19 Ill. 2d 310, 315 (1960).  In narcotics cases, a stipulation may also serve to "remove from the case any issue of the expert's qualifications, the chain of custody, or the weight and chemical composition of the suspect materials."  
People v. Williams
, 200 Ill. App. 3d 503, 516 (1990).  "Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he has previously stipulated." 
Gibson
, 287 Ill. App. 3d at 880.

In 
Williams
, 200 Ill. App. 3d at 508, the parties entered into a stipulation regarding the results of "a series of chemical analyses" performed by the police chemist, which identified two substances recovered from the defendant as cannabis and cocaine.   The question before the court was whether the tests on the white powder were sufficient to prove that the entire weight of each substance was cocaine.  
Williams
, 200 Ill. App. 3d at 516.  The stipulation described that the chemist "tested 'the white powder,' which he had described as consisting of 'a total of 102 packets.'" 
 Williams
, 200 Ill. App. 3d at 516.  The court found that the apparent "intention of the agreement between the parties could only have been to stipulate to undisputed and unrebutted expert testimony that the entire amount of the green plant material confiscated (
i.e.
, 88.67 grams) was in fact cannabis and that the entire amount of the white powder confiscated (
i.e.
, 48.7 grams) was in fact cocaine." 
 Williams
, 200 Ill. App. 3d at 516.  The court further explained its holding:

"First, we do not believe that the State reasonably would have agreed to [the chemist's] stipulated testimony, thereby foregoing the opportunity to place the chemist on the witness stand, where he could have described in detail the number and type of tests performed on individual packets, were not the stipulation intended, in part, to eliminate the need for defending his testimony against a challenge to its sufficiency.  Furthermore, we can only assume that defendant's trial counsel, having received notice during discovery, prior to trial, that [the chemist] was a potential State's witness, and having also received a copy of the laboratory report, decided to forego the opportunity to cross-examine the expert and to submit the report into evidence, in order to focus on other theories and aspects of the defense."  
Williams
, 200 Ill. App. 3d at 516.

Similarly in 
People v. Black
, 264 Ill. App. 3d 875 (1994), another possession with intent to deliver case, the court was faced with a stipulation that did not explicitly address the contested issue -- whether the test establishing that the recovered substance was cocaine was conducted on a random sample.  The court recognized that "if the chemist here had testified that her expert opinion was based upon a random sample, it would be permissible *** to draw the inference that all the packets, including those not tested, contained cocaine."  
Black
, 264 Ill. App. 3d at 877.  The stipulation, however, did not explicitly state that the sample was random; nor did it state that the sample was not random.  
Black
, 264 Ill. App. 3d at 877.  Accordingly, the court examined the stipulation, by which the parties stipulated to the expertise of the chemist, and found that "it is fair to conclude from the stipulation that the expert analyst followed basic scientific procedure such as random sampling."  
Black
, 264 Ill. App. 3d at 877. 

In this case, the parties stipulated not only that the chemist was "qualified to testify as an expert in the area of forensic chemistry," but also that she "performed tests commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance."  Thus, Rucker's first and third claimed deficiencies are without merit.  Also, based on the strength of these agreed facts, it was reasonable and fair for the trier of fact to conclude that the chemist followed basic scientific procedure, such as testing the proper functioning of any mechanical devices she used, and that it was the intent of the parties to stipulate to this fact.  If it had not been the intent of the parties to stipulate to this 
fact, it would have been in their best interests not to agree to the stipulation.  Then, the State could have put the chemist on the stand to provide additional facts, and the defense could have exercised its option to cross-examine the chemist on the details of the tests, but the parties chose to forego these options.  The parties stipulated to an adequate foundation, and the stipulated evidence was sufficient to support the finding that the substance possessed by Rucker was cocaine.   

Rucker cites a number of cases in support of his claim that the stipulated evidence was insufficient to establish beyond a reasonable doubt that the substance with which he was found was cocaine.  These cases, however, are all distinguishable.  
Neither 
People v. Ayala
, 96 Ill. App. 3d 880 (1981), 
Hill
, 169 Ill. App. 3d 901, 
Hagberg
, 192 Ill. 2d 29, or 
Raney
, 324 Ill. App. 3d 703, involved any stipulated evidence.  Further, in 
People v. Hill
, 169 Ill. App. 3d at 911, the court found the evidence sufficient to prove beyond a reasonable doubt that the substances possessed by the defendant were cocaine and heroin despite the defendant's claims that the calibration of the spectrophotometer was not checked on a sufficiently regular basis to guarantee accuracy.  The court described the defendant's claims as "entirely speculative and *** not substantiated by any facts in the record."  
Hill
, 169 Ill. App. 3d at 911.  Similarly, Rucker's claims of lack of foundation are not substantiated by any facts in the record.  The only related facts in the record show an adequate foundation; they reveal that the chemist was "qualified to testify as an expert in the area of forensic chemistry," that the tests she performed were "commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance, and that it was her opinion "within a reasonable degree of scientific certainty *** that the tested item was positive for the presence of cocaine."  
 

People v. Zazzetta
, 27 Ill. 2d 302 (1963), and 
People v. Potts
, 74 Ill. App. 2d 301 (1966), involved stipulations to the admission of polygraph test results.  In 
Potts
, the court found the "evidence highly prejudicial to defendant [because it] was admitted without inquiry as to the qualifications of the operator of the machine by means of which the test was given."
  Potts
, 74 Ill. App. 2d at 305.  Similarly in 
Zazzetta
, the report of the examiner was "admitted without foundation" and "[n]o evidence was introduced regarding the method of testing or the qualification of the operator."  
Zazzetta
, 27 Ill. 2d at 309.  To the contrary, in this case, there was evidence, by stipulation, that the chemist was "qualified to testify as an expert in the area of forensic chemistry" and that the tests she performed were "commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance."  

In 
People v. Young
, 220 Ill. App. 3d 488, 491-92 (1991), the parties stipulated to the chemist's test results, which showed that 1.86 grams of powder were positive for the presence of cocaine.  The conflict on appeal was not over whether the evidence was sufficient to show that the substance was cocaine; instead, it was over how much of the 16.87 grams of substance recovered from the defendant's home was shown to be cocaine.  The court found, that the "defendant was not proved guilty beyond a reasonable doubt of possession with intent to deliver more than 10 but not more than 30 grams of cocaine [citation], but was proved guilty of possession with intent to deliver less than 10 grams of cocaine."  
Young
, 220 Ill. App. 3d at 497-98.  There was no objection the foundation for the stipulated testimony, and from the facts as recited in 
Young
, it is unclear whether the stipulation entered into by the parties contained any description of the chemist's qualifications or the tests performed.  See
 Young
, 220 Ill. App. 3d 491-92.  Thus, 
Young
  does not support Rucker's argument.       

Finally, in 
People v. Ortega
, 83 Ill. App. 2d 49, 51 (1967), the court considered the propriety of convictions for sale and possession of narcotics in light of the stipulated testimony of the chemist.  The court considered "whether proof [by stipulation] that a substance 'purports to be' narcotic constitutes proof beyond a reasonable doubt that it is narcotic" for purposes of sustaining a conviction for sale of narcotics and found that it did not.  
Ortega
, 83 Ill. App. 2d at 51.  However, the court also considered whether a stipulation that a substance "was 'found to be' heroin" was sufficient to support a conviction for possession of narcotics and found that it was.  
Ortega
, 83 Ill. App. 2d at 51.  In this case, the stipulation provides that "the tested item was positive for the presence of cocaine in the amount of .2 grams."  Thus, it is more like the stipulation found sufficient to support conviction in 
Ortega
 than the stipulation found inadequate.  Consequently, 
Ortega 
actually supports the sufficiency of the evidence in this case, and Rucker's claim of error fails. 
 
        

Finally, Rucker claims that his sentence is unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L.Ed. 2d 435, 120 S.Ct. 2348 (2000).  He argues that section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8)(West 2000)), under which he was sentenced as a Class X offender, is the type of statute that was declared unconstitutional under 
Apprendi
.  The statute allows for sentencing of a defendant as a Class X offender if the defendant is over 21 years of age, is convicted of a Class 1 or Class 2 felony, and has been previously convicted of two Class 2 or greater Class felonies.  730 ILCS 5/5-5-3(c)(8)(West 2000). Our courts have considered the constitutionality of the this provision under 
Apprendi
 and the Illinois Constitution and found it constitutional.  See 
People v. Wallace
, 331 Ill. App. 3d 822, 838 (2002); 
People v. Dixon
, 319 Ill. App. 3d 881, 885-86 (2001);  
People v. Jones
, 322 Ill. App. 3d 236, 242-43 (2001); 
People v. Roberts
, 318 Ill. App. 3d 719, 728-29 (2000); 
People v. Lathon
, 317 Ill. App. 3d 573, 585-87 (2000).  Rucker raises no new arguments that would require us to reconsider or question the reasoning of those decisions.  Therefore, we hold that the circuit court's imposition of sentence upon Rucker as a Class X offender was constitutional.

For the foregoing reasons, we affirm the conviction and sentence.

Affirmed.

BURKE and GARCIA, JJ., concur.